IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) 2:15cv368-MHT ) (WO) |
| STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS, | ) ) ) ) |
| Defendants. | ) |

OPINION

Pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq., plaintiff United States of America filed this lawsuit naming as defendants the State of Alabama and the Alabama Department of Corrections (hereinafter jointly referred to as "the State") and claiming that the State has subjected prisoners at the Julia Tutwiler Prison for Women to an ongoing and systemic practice of sexual abuse and sexual harassment in violation of the Eighth Amendment.  The court has jurisdiction over this action

under 28 U.S.C. §§ 1331 (federal question) and 1345 (proceeding commenced by United States).

This cause is before the court on the parties' joint motion to enter settlement agreement. For the reasons that follow and based on the representations made at an on-the-record hearing on June 8, 2015, the court will adopt the terms of the agreement as a consent decree of this court; grant the motion to dismiss, albeit conditionally and without prejudice, that is, with final dismissal dependent on compliance with the settlement agreement; and retain jurisdiction for the purpose of enforcing the consent decree, including as well to resolve any disputes arising out of the agreement and to enter final dismissal of the matter as contemplated by the agreement in accordance with federal law.

I.

Before the United States filed this complaint, the parties had already engaged in protracted negotiations

and come to an agreement as to what needed to be done to remedy alleged sexual abuse at Tutwiler. Their detailed plan, which is set forth in their settlement agreement, is the product of commendable cooperation on both sides. In reaching this settlement, the parties determined that they need the injunctive power of this court to ensure that women confined at the Tutwiler facility will be treated in accordance with constitutional standards. As such, the same day that the United States filed its complaint, the parties jointly filed a motion for the court to enter their agreement as an order of the court. As succinctly embodied in their proposed order, the parties also asked the court, first, to dismiss the complaint "conditionally" and "WITHOUT PREJUDICE pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure," that is, to make "Final dismissal ... conditioned on compliance with the Settlement Agreement," Proposed order (doc. no. 2-2); and, second, to retain jurisdiction over the agreement for enforcement

purposes, including as well "to resolve any disputes arising out of the Settlement Agreement and to enter final dismissal of the matter as contemplated by the Settlement Agreement." Id.

## II.

As stated above, this case arises from the United States' allegations that the State has subjected prisoners at Tutwiler to sexual abuse and sexual harassment. Accordingly, in assessing the agreement, the court relies on these allegations (unchallenged by the State for the limited purpose of assessing the agreement) as set forth in the complaint.

Tutwiler is a maximum-security women's prison operated by the State in Wetumpka, Alabama. In 2013, the Department of Justice investigated allegations of staff sexual abuse and sexual harassment there. What it asserts to have found is, if true, gut-wrenching and horrific. It is alleged that staff at Tutwiler raped and sexually abused women in their custody; required

them to submit to sexual advances in order to obtain necessities or avoid punishment; and knowingly allowed a sexually violent environment to persist. It is further alleged that the State does not provide women any means to file administrative grievances to report sexual abuse and that the State failed to investigate allegations of abuse adequately. Moreover, it is alleged that staff retaliated against those who did attempt to report abuse by placing them in segregation and threatening them with physical assault. It is further alleged that the State failed to discipline appropriately both low-level staff and high-level officials who engaged in, encouraged, or deliberately disregarded the abuse and that some staff members were permitted to resign in lieu of termination, others were reassigned to different facilities, and others were promoted.

It is also alleged that the State failed to implement policies or manage the facility in a way that met constitutional standards and failed to institute

gender-responsive policies and procedures to address sexual abuse and harassment, to staff the facility at safe levels, or to develop a classification system that would protect potential victims of abuse.

These allegations are not new. In 1995, the Department of Justice notified the State of allegations of sexual abuse by staff at Tutwiler; and, in 2007, it identified Tutwiler as the women's prison with the highest rate of sexual-assault allegations in the country. Several reports have been issued since then by other organizations that discuss the continuing nature of the alleged problem.

The proposed settlement agreement mandates numerous changes in prison policies and establishes procedures to ensure more rigorous protection from sexual abuse for prisoners at Tutwiler.

The agreement requires the State to implement fully all changes within nine months. At that time, and every six months thereafter, it requires that the court receive a compliance report from the parties'

independent monitor, a corrections expert who will ensure that the terms of the agreement are met. After the State has achieved substantial compliance with all substantive provisions of the agreement in three consecutive compliance reports, that is, for 18 consecutive months, the agreement will terminate.

### III.

Federal law requires litigation over prison conditions to comply with the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626. "The PLRA strictly limits the prospective relief a federal court may order in cases concerning prison conditions." Gaddis v. Campbell, 301 F. Supp. 2d 1310, 1313 (M.D. Ala. 2004) (Thompson, J.). The PLRA's restrictions extend to consent decrees. 18 U.S.C. § 3626(c)(1). By contrast, private settlement agreements whose terms are not subject to federal-court enforcement (but may be enforceable under state law) do not need to abide by the PLRA's requirements. 18 U.S.C. § 3626(c)(2). In

this case, the parties confirmed orally during the June 8 hearing that their settlement agreement should be treated as a "consent decree" governed by the PLRA and is enforceable by this court.

The PLRA provides that "a court shall not grant or approve any prospective relief unless the court finds that such relief [(1)] is narrowly drawn, [(2)] extends no further than necessary to correct the violation of a Federal right, and [(3)] is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1)(B).

The PLRA generally requires that the court "engage in a specific, provision-by-provision examination of [a] consent decree[], measuring each requirement against the statutory criteria."  Cason v. Steckinger, 231 F.3d 777, 785 (11th Cir. 2000).  However, the

8

district court does not need to "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute." Id. at 785 n.8. "The parties are free to make any concessions or enter into stipulations they deem appropriate." Id.

The PLRA allows the court, upon the motion of any party or intervener, to terminate prospective relief two years after the court approves or grants the relief or one year after the court has entered an order denying termination of relief. 18 U.S.C. § 3626(b)(1). However, should any party move for termination while violations of federal rights continue to exist, the PLRA makes clear that relief need not terminate merely because a party has so moved. Rather, the law requires the court to assess whether prospective relief remains necessary at that time. See id. at § 3626(b)(3) ("Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a

9

current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.").

In this case, the parties all agree that the proposed settlement, which, according to them, should be treated as a proposed consent decree, satisfies the so-called "need-narrowness-intrusiveness" requirements of the PLRA. 18 U.S.C. § 3626(a)(1)(A); see also Laube v. Campbell, 333 F. Supp. 2d 1234, 1239 (M.D. Ala. 2004) (Thompson, J.). They stipulate accordingly in Section XII of their agreement. Furthermore, in the June 8 hearing, the parties stated their reasons for believing the agreement meets these requirements. They argued that the remedy is narrowly tailored because it is limited to the Tutwiler prison and because it exclusively addresses the problem of sexual abuse and sexual harassment at that facility. The parties further noted that the abuses alleged in this case were

pervasive and severe, so the extensive level of oversight provided for in this agreement is necessary. Finally, the parties took care in their negotiations not to interfere with the State's penal mission, and the State was willing to agree only to provisions it felt were necessary to address the identified problems, and nothing more.  Based on its own independent assessment of the settlement, the  court agrees and finds that the settlement's relief, as it will be embodied in a consent decree, is necessary, narrowly tailored and no more intrusive than necessary to remedy the identified constitutional violations.

The court further finds that the settlement agreement will have no adverse effect on public safety or the operation of the criminal-justice system.  <u>See</u> 18 U.S.C. § 3626(a)(1)(B).  As the parties themselves have noted, the settlement will promote public safety by not only protecting the prisoners at Tutwiler from sexual abuse and harassment, it will also protect the prison guards. In sum, the court is satisfied that the

11

terms of the settlement agreement, as they will be embodied in a consent decree, are in full compliance with the PLRA, and approves the agreement.

In the event that any party moves for termination of prospective relief after two years but before the parties have maintained at least 18 consecutive months of substantial compliance, the court will assess whether prospective relief remains necessary at that time.

IV.

The parties request that the court "conditionally" dismiss the case under Federal Rule of Civil Procedure 41(a)(2), but retain jurisdiction while the terms of the agreement are being carried out.

Rule 41(a)(2) provides that, except in circumstances not applicable here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2) (emphasis added). In Kokkonen v.

Guardian Life Ins. Co. of America, the Supreme Court explained that, "If the parties [to a case] wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so."  511 U.S. 375, 381 (1994) (emphasis removed).  Under Kokkonen, a court may retain enforcement jurisdiction over a matter if the settlement agreement is made part of the order of dismissal either by a separate provision "retaining jurisdiction" or by incorporating the terms of the agreement into the order itself.  Id.; see also Anago Franchising, Inc. v. Shaz, LLC, 667 F.3d 1272, 1278-79 (11th Cir. 2012). "When dismissal is pursuant to Federal Rule of Civil Procedure 42(a)(2) ... the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order."  Kokkonen, 511 U.S. at 381.

Here, the parties have asked for the court to dismiss the case conditionally and without prejudice, but to preserve jurisdiction over the case while the terms of the agreement are being carried out. The court obliges, and will retain enforcement under both mechanisms provided by Kokonnen: by express provision and by incorporating the terms of the parties' agreement into a consent decree. In other words, the court dons both belt and suspenders.

An appropriate consent decree and judgment will be entered.

DONE, this the 18th day of June, 2015.

                         /s/ Myron H. Thompson
                        **UNITED STATES DISTRICT JUDGE**