IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:15cv368-MHT |
| | ) | (WO) |
| STATE OF ALABAMA and | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The background of this case reveals the following.
On June 18, 2015, the court adopted the parties'
settlement agreement as a consent decree. *See United
States v. Alabama*, No. 2:15cv368-MHT, 2015 WL 3796526
(M.D. Ala. June 18, 2015) (Thompson, J.). Among other
provisions, the decree requires the Alabama Department
of Corrections (ADOC) to take measures to "address low
staffing levels and the need for more women officers"
at the Julia Tutwiler Prison for Women, including by
"working with the Alabama Peace Officers Standards and
Training Commission (APOSTC) in screening, selecting,

or hiring applicants for the entry-level corrections officer positions until such standards, or any other physical test employed, are: (a) Validated for a corrections environment; and (b) Examined for the necessity of gender-norming certain components." Consent Decree (Doc. 11) at §§ III.C, III.C.1.i.1. A corrections expert was appointed to serve as an independent monitor to ensure that the terms of the consent decree are met. After ADOC has achieved and maintained substantial compliance with this and all other substantive provisions of the consent decree for 18 consecutive months, the consent decree will terminate. *See United States v. Alabama*, 2015 WL 3796526, at *2.

Since 2015, ADOC has not attained substantial compliance with the provision above regarding the implementation of validated and gender-normed entry standards for correctional officers. According to the monitor, Dr. Kathleen Dennehy, "ADOC's recruitment and hiring data have underscored a system-wide issue with

the application of the APOSTC physical standards to women candidates for Correctional Officer positions." Monitor's Thirteenth Compliance Report (Doc. 61-1) at 29. During the latest status conference, moreover, the monitor expressed her "strongly" held opinion that the APOSTC standards are not "based upon bona fide occupational requirements of correctional officers." Mar. 28, 2022, R.D. Status Conference Tr. at 16-17.

Due to the connection between "APOSTC's certification process for law enforcement personnel (including correctional officers) in the State of Alabama" and receipt of "certain pension benefits and promotional opportunities," the parties report that the development and implementation of validated and gender-normed APOSTC standards for correctional officer candidates at Tutwiler are the only "viable option for hiring reform at this time." Joint Statement (Doc. 65) at 2. The parties report that ADOC does not have authority over APOSTC or over APOSTC's entry standards for correctional officers. *See id.* However, they

3

represent that ADOC's previous efforts to coordinate with APOSTC have included "(1) advocating that APOSTC modify the administration of the [physical agility/ability test] from the first week of the correctional trainee academy[] to week eight of the program, after the trainees have had more time to prepare for the physical fitness requirements; (2) implementing, with the support of the APOSTC, a two-part corrections academy that would help ADOC to develop a new non-APOSTC correctional officer position to work basic correctional posts; and (3) working with the APOSTC to encourage a shift in certification requirements for correctional officers that focus on the job-specific tasks of a correctional officer, instead of tasks associated with a policing environment." *Id.* at 3 (internal quotation marks omitted). More recently, ADOC has "contracted with Troy University to develop and validate an entry test designed with the job requirements of correctional officers at the forefront, to present to APOSTC for

4

consideration and implementation." *Id.* Ultimately, it
is the monitor's opinion that the defendants will
remain in only "'partial compliance' with the
staffing ... and recruitment ... provisions of the
settlement agreement" until the entry standards for
correctional officers have been validated and examined
for the necessity of gender-norming certain components.
Monitor's Thirteenth Compliance Report (Doc. 61-1) at
32.

***

Based on the above representations, it is ORDERED
that the parties are to meet, and, after receiving
input from the monitor, submit to the court by April
26, 2022, a joint proposal for the timely resolution of
the issue of compliance with § III.C.1.i.1 of the
consent decree (Doc. 11) that has been pending since
2015, including what steps to take, how to involve

those needed for timely resolution (in particular, APOSTC), and how to involve them.

DONE, this the 13th day of April, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE